IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ROBERT V. SCOTT,**

        **Petitioner,**

v.                                                               Civil Action No. 3:23-CV-203
                                                                               (GROH)

**R. BROWN,**

        **Respondent.**

**REPORT AND RECOMMENDATION TO DENY
AS MOOT PETITION FOR HABEAS CORPUS RELIEF**

## I.    INTRODUCTION

On September 11, 2023, the *pro se* Petitioner, a federal inmate who was formerly incarcerated[1] at Gilmer FCI, in Glenville, West Virginia, filed the above-styled habeas corpus action pursuant to 28 U.S.C. § 2241. ECF No. 1.[2] The Petitioner seeks an order which awards him earned credit time and additional time for completion of a Non-Residential Drug Treatment program, and immediate release. ECF No. 1 at 5–8, 11.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the

---

[1] According to the Federal Bureau of Prisons' inmate locator, the Petitioner, inmate register number 24800-171, is now located at the Pittsburgh RRM, with a listed release date of April 4, 2025. https://www.bop.gov/inmateloc/.

[2] ECF Numbers cited herein refer to case number 3:23-CV-203 unless otherwise noted.

District Court deny as moot and dismiss the petition for habeas corpus with prejudice.

## II. PROCECURAL HISTORY

### A. Conviction and Sentence in the District of South Carolina[3]

On November 13, 2012, an indictment was returned in the District of South Carolina, case number 2:12-CR-881, which charged the Petitioner with one count of being a prohibited person in possession of a firearm and ammunition. ECF No. 2. Pursuant to a written agreement, the Petitioner entered a guilty plea on July 18, 2013, to Count One of the indictment. ECF Nos. 42, 44. On March 28, 2017, the Petitioner was sentenced to 180 months of incarceration.[4] ECF No. 67.

### B. Appeal to the Court of Appeals for the Fourth Circuit

On April 4, 2017, the Petitioner filed a notice of intent to appeal in the Circuit Court of Appeals. ECF No. 70. By unpublished per curiam opinion decided on October 12, 2017, the Fourth Circuit affirmed the Petitioner's criminal judgment. ECF No. 78.

### C. Motion to Vacate, Set Aside, or Correct Sentence Under § 2255

The Petitioner filed a motion to vacate on December 18, 2018, arguing that: (1) the court abused its discretion in sentencing; (2) his sentence was improperly enhanced under the Armed Career Criminal Act based on prior concurrent convictions; (3) he received ineffective assistance of counsel in his appeal; and (4) the court imposed an

---

[3] All CM/ECF references in Sections II.A., II.B., and II.C., unless otherwise noted, refer to entries in the docket of Criminal Action No. 2:12-CR-881, from the District of South Carolina, available on PACER. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (Courts "may properly take judicial notice of public record); Colonial Penns. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[4] Sentence was imposed on March 28, 2017, however, the judgment was entered and filed with the Clerk on March 30, 2017. ECF No. 67.

illegal sentence. ECF No. 82.

In response, on February 11, 2019, the Government filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 88. The Petitioner then filed a motion to amend his § 2255 motion, ECF No. 91, and a response to the Government's motion, ECF No. 98. The court denied the Petitioner's motion under 28 U.S.C. § 2255, and denied him a certificate of appealability on April 19, 2021. ECF Nos. 108, 109.

### D.  Instant Habeas Corpus Proceedings

On September 11, 2023[5], Petitioner filed a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. The petition alleges that Petitioner's sentence was improperly calculated by the BOP which failed to grant him credit for participation in programs. ECF No. 1 at 5–8. Further, the Petitioner challenges the Bureau of Prisons' interpretation of the First Step Act and associated regulations in the agency's determination of the inmate risk level and eligibility to accrue time credits. Id. at 7. The Petitioner contends that he exhausted his administrative remedies, stating that "all [were] denied and pursued [ ] before." Id. at 10. As relief, the Petitioner requests that the Court order the BOP: (1) to award him earned credit days; (2) to immediately release him. Id. at 11.

On September 29, 2023, the Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, and a memorandum and exhibits in support thereof. ECF Nos. 14, 14-1 through 14-4. The Respondent contends that the BOP correctly implemented the Prisoner Assessment Tool Targeting Estimated Risk and Needs

---

[5] The petition was executed by the Petitioner on May 9, 2023, but not filed with the Clerk until September 11, 2023. ECF No. 1 at 12–13.

(PATTERN)[6] tool for calculating each inmate's recidivism risk score as minimum, low, medium, or high. ECF No. 14-1 at 4–5. Further, the Respondent asserts that the Petitioner was scored under PATTERN to be a medium[7] risk recidivism level, and thus precluded from having Federal Time Credits applied under the First Step Act. Id. at 5. Because the Petitioner's risk level was assessed as medium, he is currently ineligible to have his FTC applied, because pursuant to 18 U.S.C. § 3624(g)(1)(D)(i)(I), only inmates with a minimum or low risk to recidivate pursuant to the last two reassessments are eligible to

---

[6] PATTERN is the system developed pursuant to 18 U.S.C. § 3624(g)(1)(A), and Subchapter D, codified at 18 U.S.C. § 3631, et seq. The provisions of 18 U.S.C. § 3632 entitled "Development of risk and needs assessment system" provides that the system shall be used to:

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
> (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;
> (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--
> (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;
> (B) to address[1] the specific criminogenic needs of the prisoner; and
> (C) all prisoners are able to successfully participate in such programs;
> (6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);
> (7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and
> (8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

[7] According to the Declaration of Misty Shaw, a paralegal for the BOP Mid-Atlantic Regional Office Consolidated Legal Center, the Petitioner's most recent risk assessment was conducted on March 31, 2023, at which time the Petitioner was assigned a medium risk recidivism level. ECF No. 14-2 at 1. Likewise, the "Individualized Needs Plan – Program Review" for the Petitioner shows that he was assigned a medium risk recidivism level on March 31, 2023. ECF No. 14-3 at 3. Finally, the Petitioner's FSA Time Credit Assessment shows his assignment as "R-MED" with a start date of March 31, 2023, and with prior "R-MED" assessments on March 24, 2022, and September 27, 2022. ECF No. 14-4. All prior assessments showed the Petitioner with a high ("R-HI") risk assessment. Id.

have FTC applied. Id. at 5–9. The Respondent also argues that the PATTERN system should be entitled to substantial deference, pursuant to Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984). Id. at 5–6. Additionally, the Respondent argues that pursuant to 18 U.S.C. § 3621(b), decisions made under 18 U.S.C. § 3624 are discretionary, and not reviewable by the Courts based on § 3621(b) which provides in part, "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." Id. at 8–11. Further, the Respondent contends that the Petitioner does not have a protected liberty interest in being placed on Home Confinement or in a Residential Reentry Center. Id. at 13. Finally, the Respondent argues that the Petitioner's participation in the non-residential drug treatment program does not merit additional Federal Time Credits, because the provisions of 18 U.S.C. § 3621(e) only apply to inmates who complete the **Residential** Drug Treatment Program (RDAP). Id. at 15–16.

The Petitioner filed a response in opposition to the motion to dismiss on October 16, 2023. ECF No. 18. Therein, he argues that the First Step Act is contradictory or ambiguous, and that the PATTERN system is flawed. Further, the Petitioner asserts that he has participated in Evidence Based Recidivism Reduction (EBRR) programs, substance abuse programs, and has worked as a productive inmate maintaining the facility, and has never had a conduct rule violation. Id. at 2. The Petitioner also argues that the BOP has changed its policies regarding whether inmates with detainers "are entitled to 'earned time credits.'" Id. at 3. Further, he questions the BOP's determination that a prisoner may earn time credits, but not simultaneously have the credits applied. Id. at 4, 6–7. According to the Petitioner, his prior unrelated offenses are considered in his

5

PATTERN score, and improperly elevate his recidivism risk. Id. at 5–6. The Petitioner contends that if he were granted his credit time he would be released. Id. at 7. He asserts that he has a liberty interest in the denial of his good time credit days earned. According to the Petitioner he has earned 570 days of credit, with a release date of April 4, 2025. Id. at 8. The Petitioner requests that the Court examine the application of his prior criminal history points, and asks the Court to grant him his Earned Credit Time. Id. at 9.

The Respondent's reply filed on November 13, 2023, summarizes the First Step Act's provisions related to: (1) the calculation of federal prison sentences, including that inmates are eligible to earn up to ten days of Federal Time Credits for every 30 days of successfully completed BOP-approved recidivism reduction programming; (2) inmate's eligibility for earning an additional five days of time credits for every 30 days of successfully completed BOP-approved recidivism reduction programming; and (3) among other requirements, that the Attorney General establish a risk and needs assessment system, and develop recommendations regarding evidence-based recidivism reduction programs.. ECF No. 22 at 2–3. Further, the Respondent quotes the Department of Justice's National Institute of Justice, which states that PATTERN "is designed to predict the likelihood of general and violent recidivism for all [Bureau of Prisons] inmates three years post release. PATTERN contains both static (e.g., criminal history) and dynamic (e.g., participation in education or drug treatment) factors that are associated with one's risk of recidivism. The PATTERN assessment tool provides predictive scores, developed and validated for males and females separately." Id. at 3. The Respondent lists the 15 variables considered under the PATTERN tool, and how each variable is scored. Id. at 3–4. Following the 2020 and 2021 reviews ("Review and Revalidation of the First Step

Act Risk Assessment Tool" prepared by the Department of Justice), which both found "several discrepancies in scoring, coding, and specification of the PATTERN system," the PATTERN 1.2 system was updated, and in May 2022, the current version, PATTERN 1.3 was implemented. Id. at 4–5. According to the Respondent, the Petitioner's 180-month sentence commenced on March 28, 2017, and upon his initial PATTERN risk assessment, he was determined to be at a high risk level for recidivism. Id. at 6. Even after PATTERN 1.3 was implemented, the Petitioner's recidivism risk score was calculated at medium. Id. At the Petitioner's most recent risk assessment on September 21, 2023, the Petitioner's scores still reflected a medium risk. Id. at 6–7.

The Respondent agreed with the Petitioner's contention that he had earned a total of 580 Federal Time Credits. Id. at 7. However, the Petitioner was not eligible to apply those credits because he had not attained a low or minimum PATTERN recidivism risk score, nor had he petitioned the warden and been granted an exception. Id. Finally, the Respondent asserts that courts "continue to hold that classification determinations made by the BOP, such as those made under Program statement 5100.08 and other policies and regulations, are not reviewable." Id.

### III. LEGAL STANDARD

#### A. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss

7

a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[8] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### B. Post-Conviction Remedies and Relief Including Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

Prisoners seeking to challenge the validity of their convictions or their sentences are required to proceed under § 2255 in the district court of conviction. By contrast, a petition for writ of habeas corpus, pursuant to § 2241, is intended to address the execution of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. "As we noted in *O'Brien* [*v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005)], the 'essence of habeas corpus is an attack by a person in custody upon the legality of that

---

[8] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

8

custody' and 'the traditional function of the writ is to secure release from illegal custody.'" Obando-Segura v. Garland, 999 F.3d 190, 194 (4th Cir. 2021), quoting Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Accordingly, a petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser, 411 U.S. at 498 – 499. "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

### C. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.

10

1993); see also Martin, 980 F.2d at 952.

### D. Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence"

11

favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.     ANALYSIS

"As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite." United Pub. Workers of Am. (C.I.O.) v. Mitchell, 330 U.S. 75, 89, 67 S. Ct. 556, 564 (1947)

(Internal citations omitted). Article III of the United States Constitution limits the jurisdiction of the federal courts to cases or controversies. "Article III's 'case or controversy' requirement prevents federal courts from deciding cases that are moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698 (3d Cir. 1996) (citing Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3 (1964).

Therefore, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormick, 395 U.S. 486, 496, 89 S.Ct. 1944 (1969). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698–99 (3d Cir. 1996) (citing United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209 (1980) (The interest required of a litigant to maintain a claim under the mootness doctrine is the same as that required to attain standing)).

In his petition and response, it is clear that the Petitioner's ultimate goal was to be released from the custody of the BOP to a Residential Reentry Center or halfway house sooner than his Projected Release Date. ECF No. 1 at 8, 11. The BOP inmate locator website indicates that the Petitioner is now located at the Pittsburgh RRM, with a Projected Release Date of April 4, 2025. Accordingly, even if the Petitioner were previously entitled to recalculation of his Time Credits for release from a correctional institution to a Residential Reentry Center, he has already received that relief, and the case is now moot.

Further, to the extent that the Petitioner seeks an order which directs the BOP to

13

credit him a set number of First Step Act credits, the District Court is unable to grant him relief. See Winegar v. Adams, No. 1:20-CV-246, 2021 WL 5629920, at *5 (N.D.W. Va. Nov. 3, 2021), report and recommendation adopted, No. 1:20-CV-246, 2021 WL 5629480 (N.D.W. Va. Nov. 30, 2021), citing to: 18 U.S.C. § 3632(d)(4)(A); and Jones v. Phelps, No. 1:21-cv-418-JFA-SVH, 2021 WL 3668885, at *8 (D.S.C. June 16, 2021), *report and recommendation adopted*, 2021 WL 3667396 (D.S.C. Aug. 17, 2021) ("The relevant statutes, as well as the heavy weight of authority, do not show that the BOP is obligated to apply petitioner's earned time credits prior to January 15, 2022 ... the court has no discretion to disregard the plain language of the relevant statutes."). Moreover, even if the Petitioner earned more time credits than calculated by the BOP, such time credits may only be applied toward prerelease custody or early transfer to supervised release, not to reduce the term of supervised release.

The application of Petitioner's First Step Act Time Credits is governed by 28 C.F.R. § 523.44. In subparagraph (b), that rule provides:

> Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has:
> (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment;
> (2) Shown through the periodic risk reassessments a demonstrated recidivism risk reduction or maintained a minimum or low recidivism risk, during the term of imprisonment; and
> (3) Had the remainder of his or her imposed term of imprisonment computed under applicable law.

In subparagraph (c), the Rule addresses prerelease custody and provides that:

> The Bureau may apply earned FSA Time Credits toward prerelease custody only when an eligible inmate has, in

14

> addition to satisfying the criteria in paragraph (b) of this section:
> (1) Maintained a minimum or low recidivism risk through his or her last two risk and needs assessments; or
> (2) Had a petition to be transferred to prerelease custody or supervised release approved by the Warden, after the Warden's determination that:
> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> (iii) The prisoner is unlikely to recidivate.

Subparagraph (d) further dictates that:

> The Bureau may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. 3624(g) only when an eligible inmate has, in addition to satisfying the criteria in paragraphs (b) and (c) of this section:
> (1) An eligible inmate has maintained a minimum or low recidivism risk through his or her last risk and needs assessment;
> (2) An eligible inmate has a term of supervised release after imprisonment included as part of his or her sentence as imposed by the sentencing court; and
> (3) The application of FSA Time Credits would result in transfer to supervised release **no earlier than 12 months before the date that transfer to supervised release would otherwise have occurred**.

28 C.F.R. § 523.44(d) (emphasis added). The regulation does not permit the application of FSA credits to shorten a period of supervised release. Thus, even if this Court were to grant Petitioner's request to apply any earned Time Credits, pursuant to 28 C.F.R. § 523.44, those days could only be applied towards prerelease custody, or early transfer to supervised release. The Petitioner has already been released to a Residential Reentry Center (prerelease custody), so any additional FSA credits would not modify the Petitioner's status in that placement. Therefore, any recalculation of the Petitioner's FSA credits would be moot because such a recalculation would not alter the Petitioner's

15

current placement, or shorten his term of supervised release. Accordingly, for the above reasons it is clear that the claims raised by the Petitioner are now moot, and the petition should be dismissed.

## V.     RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the petition for habeas corpus [ECF No. 1] filed on September 11, 2023, be **DENIED** and **DISMISSED WITH PREJUDICE**, and that Respondent's motion to dismiss filed on September 29, 2023 [ECF No. 14] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his

last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

    DATED:    April 30, 2024

                            ROBERT W. TRUMBLE
                            UNITED STATES MAGISTRATE JUDGE